**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

MARC A. MANUS
5649 Murdoch Avenue
Saint Louis, MO 63109

    Plaintiff

v.

PLAYERS NETWORK           Case No.:
1771 E. Flamingo Road
#201-A
Las Vegas, NV 89119


Serve on Resident Agent:
MICHAEL S. PRATTER
1771 E. Flamingo Road
#201-A
Las Vegas, NV 89119

    Defendant

## COMPLAINT

Plaintiff, MARC A. MANUS, ("PLAINTIFF"), by and though his counsel, Matheau J. W. Stout, Esq. files this Complaint against PLAYERS NETWORK A/K/A PLAYERS NETWORK, INC. ("PNTV"), and alleges:

**Parties**

1. Plaintiff is an individual, residing in Missouri, who is an investor in Defendant.

2. Defendant is a publicly traded corporation using the trading symbol PNTV, subject to the mandatory reporting requirements of Section 12 and/or Section 15(d) of the

Securities Exchange Act of 1934, domiciled in Nevada, operating in Maryland and throughout the United States through its subsidiary, WeedTv.com, with purported physical operations in Nevada, California and Argentina, which can issue securities under Section 3(a)(10) of the Securities Act of 1933.

### Jurisdiction and Venue

6. This action is instituted pursuant to

   a. 15 U.S.C § 77c(a)10 (Section 3(a)(10) of the Securities Act of 1933), hereinafter ("Section 3(a)(10)") for the issuance of Defendant's common stock in exchange for claims Plaintiff holds against PNTV; and also pursuant to

   b. 28 U.S.C. § 2201 for several declaratory judgments, including which declare that Defendant's public securities filings, press releases, website and investor marketing materials contain material misstatements and omissions that misrepresent the financial condition of PNTV, despite Certifications to the contrary signed by PNTV's CEO under 18 U.S.C. Section 1350 as adopted pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 and pursuant to Rule 13a-14(a) and Rule 15d-14 under the Securities Exchange Act of 1934.

7. This Court has jurisdiction over the parties hereto based on the Federal Statutes. The amount in controversy exceeds $75,000 with regard to the additional counts against Defendant herein.

8. Venue is proper in the Northern District as all of the allegations of misrepresentation contained herein occurred digitally, via the internet through Defendant's publicly available securities filings on SEC.gov, press releases, websites including

Weedtv.com, Playersnetwork.com, Youtube.com, and investor marketing materials published elsewhere on the world wide web, and thus available for viewing in the Northern District.

## Summary of Facts

9.  On May 29, 2018, Defendant published an 8-K Current Report on SEC.gov which purported to announce Defendant's acquisition of a leasehold interest in a 56,000 square foot commercial cannabis agricultural facility in Salinas, California (the "Salinas Acquisition"). The May 29, 2018 8-K (without the exhibits thereto) is attached hereto and incorporated herein as Exhibit A, and partially excerpted below as follows:

**Item 1.01 Entry into a Material Definitive Agreement.**

<u>Salinas, CA Acquisition</u>

On May 24, 2018, Players Network (the "Company"), through its newly-formed wholly-owned subsidiary, Players Michigan LLC ("Players Michigan"), acquired substantially all of the assets of LCG Business Enterprises, LLC ("LCG"), pursuant to an Asset Purchase Agreement (the "Purchase Agreement") between Players Michigan and LCG. The assets include LCG's leasehold interest in a 56,000 square foot commercial cannabis agricultural facility located at 25600 Encinal Road in Salinas, California (the "Facility"), and the tangible assets related to the cannabis cultivation activities previously conducted by LCG at the Facility.

The consideration for the acquisition is (i) $5,000,000 in cash, of which $1,000,000 was paid at closing, with the remaining $4,000,000 to be paid in four monthly installments of $1,000,000 each; and (ii) the assumption of LCG's trade payables.

PNTV and its auditor have had ample opportunity to prepare, review and file an 8-K/A to include the financial statements which reflect such acquisition, but Defendant has chosen not to do so.

10.	PNTV and its auditor have had ample opportunity to prepare, review and file PNTV's past due 10-Q Quarterly Reports for June 30, 2018 and September 30, 2018, which by necessity would include the financial statements reflecting such acquisition, and which would disclose the non-payment or late payment of the "remaining $4,000,000" which was "to be paid in four monthly installments of $1,000,000 each", but they chose not to do so.

11.	Upon information and belief, it is a requirement for mandatory SEC filers under the Exchange Act to file 8-Ks within four (4) business days of a material event, such as the non-payment or late payment of a $1,000,000 installment due under the Salinas Acquisition, leading Plaintiff to believe that something is amiss, and necessitating the present lawsuit.

12.	Plaintiff communicated numerous times with PNTV, through CEO Mark Bradley and its Strategic Relationship Manager a/k/a Investor Relations designee David Klepinger, via text, email and telephone, requesting that the Company bring its SEC filings current, and to confirm if the Salinas Acquisition was completed as the Defendant indicated in a Youtube.com video (since taken down by the Defendant) located at https://www.youtube.com/watch?v=1uabl_5kxkA and in an Investor Presentation here: https://s3.amazonaws.com/content.otcmarkets.com/media/93251189/pNtyuKFRAZKjZpB/doc.pdf , yet to date the Defendant has not filed the required 8-K/A or the 10-Q reports to clarify the status of the Salinas Acquisition.

13.	Instead of publishing the required 8-K/A and 10-Q SEC filings, Defendant has published several unsupported press releases, investor presentations, articles or videos on the internet which make claims as to the ownership or completed status of the Salinas

Acquisition, and which claim huge revenue already earned from the Salinas Acquisition, including the following examples from CNBC.com and NASDAQ.com:

a. https://www.cnbc.com/2018/05/30/globe-newswire-players-network-closes-acquisition-that-will-immediately-deliver-significant-revenue-estimated-at-11000000-annually.html

b. https://www.nasdaq.com/press-release/players-network-announces-unaudited-record-annual-sales-up-2872-from-prior-year-estimated-at-252-20181010-00458

Based on the foregoing, Plaintiff believes that the Salinas Acquisition is not properly disclosed within PNTV's public SEC filings.

14. Since the filing of its May 29, 2018 8-K, Defendant has not filed another 8-K or an 8-K/A which mentions the Salinas Acquisition at all, but has instead focused extensively on highlighting news of its purported Argentina venture and recent CBD joint venture, so the current status of the Salinas Acquisition has not been disclosed to the SEC, to the Plaintiff or other shareholders or to the investing public.

15. Since the May 29, 2018 8-K, Defendant's regular posting of "news" in the form of website content, videos, and press releases purporting to announce other positive developments like the Argentina venture and CBD joint venture indicates that Defendant could have filed an 8-K to disclose the status of the Salinas Acquisition.

16. As a public company subject to the reporting requirements of Section 12 and/or 15(d) of the Securities Exchange Act of 1934, Defendant has a duty to disclose material information, both good and bad, within four (4) business days of receipt of such information.

17. Whether or not Defendant missed or was late on any of the $4,000,000 in required payments to complete the Salinas Acquisition is material information which would require timely disclosure to Defendant's shareholders and the public, but Defendant failed to make such timely disclosure.

18. The amount of the Salinas payments is material, such that Defendant's disclosure that any of the $4,000,000 in required payments were missed or late would bring into question whether or not PNTV actually "acquired" and "owns" its Salinas facility as its marketing material suggests, which would have a material adverse effect on PNTV, which requires disclosure.

**Suitability of Section 3(a)(10)**

19. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

20. Section 3(a)(10) provides, in its entirety, as follows:

Except with respect to a security exchanged in a case under title 11, any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval;

21. Plaintiff holds a bona fide outstanding claim against Defendant as a shareholder whose stock lost value due to the pattern of Defendant's delinquency in its securities filings coupled with unsupported news releases.

22. Plaintiff seeks a Court Order ("Injunction") approving an exchange of Plaintiff's claim for shares of Defendant's common stock.

23.    Plaintiff requests this Honorable Court to hold a hearing upon the fairness of the terms and conditions of such exchange of Plaintiff's bona fide outstanding claim for shares of Defendant's common stock ("Fairness Hearing").

24.    This Honorable Court has the ability to hold such a Fairness Hearing, and to determine the fairness of the terms and conditions of such an exchange of Plaintiff's Claims for Defendant's common stock under Section 3(a)(10).

25.    PNTV's history of falling behind in its SEC filings, its volatile stock price, and its misleading press releases, makes it virtually impossible for Plaintiff to deposit PNTV stock into a brokerage account without a federal court order recognizing an exemption from registration under Section 3(a)(10), and thus Plaintiff cannot recoup its losses without relief under Section 3(a)(10).

26.    PNTV's public securities filings are so delinquent that it is impossible for Plaintiff to rely upon Defendant's ability to repay Plaintiff using cash, and Plaintiff seeks a settlement pursuant to Section 3(a)(10) whereby PNTV would be bound by a federal Court Order which requires PNTV to reserve sufficient shares of its common stock to abide by the terms of a Court Order, and thereafter that PNTV would issue shares of its publicly traded common stock to Plaintiff when requested in tranches, as payment for the settlement of Plaintiff's Claim Amount under Section 3(a)(10).

27.    This Honorable Court has the power to issue a Court Order ("Injunction") approving the settlement of Plaintiff's Claim Amount under Section 3(a)(10).

28.    This Honorable Court can require PNTV to irrevocably reserve a sufficient number of shares of PNTV's common stock at its Transfer Agent, such that the terms of a settlement between the parties would be honored by PNTV's present and future

management at such times as Plaintiff requests the issuance of such shares of PNTV common stock in tranches.

29. For the foregoing reasons, Plaintiff has suffered a considerable loss which can only be remedied under Section 3(a)(10), which necessitates this present action.

30. Section 3(a)(10) requires that a hearing be conducted as to the fairness of the terms and conditions of the exchange of claims for securities.

### Count I

### Court Order Pursuant to Section 3(a)(10)

31. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

32. Section 3(a)(10) provides, in its entirety, as follows:

> Except with respect to a security exchanged in a case under title 11, any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval;

33. Plaintiff holds a bona fide outstanding claim against Defendant as a shareholder who has been harmed by Defendant's pattern of falling behind in its mandatory securities filings while posting unsupported press releases, including Defendant's failure to properly disclose the Salinas Acquisition.

34. Plaintiff seeks a court order approving an exchange of Plaintiff's Claim for shares of Defendant's common stock.

35. Plaintiff requests this Honorable Court to hold a hearing upon the fairness of the terms and conditions of such exchange of Plaintiff's Claim for shares of Defendant's common stock ("Fairness Hearing").

36. This Honorable Court has the ability to hold such a Fairness Hearing, and to determine the fairness of the terms and conditions of such an exchange of Plaintiff's Claim for Defendant's common stock under Section 3(a)(10).

37. PNTV's failure to file any 8-K, 8-K/A updating the status of the Salinas Acquisition, and its failure to file the 10-Q Quarterly Reports for June 30, 2018 and September 30, 2018 makes it impossible for Plaintiff to deposit PNTV stock into a brokerage account without a federal court order recognizing an exemption from registration under Section 3(a)(10), and thus Plaintiff cannot recoup its losses without relief under Section 3(a)(10).

38. PNTV's public securities filings are so delinquent that Plaintiff cannot rely upon Defendant's ability to pay Plaintiff using cash, and Plaintiff seeks a settlement pursuant to Section 3(a)(10) whereby PNTV would be bound by a federal court which requires PNTV irrevocably to reserve a sufficient shares of its common stock in order to comply with the court order, and thereafter that PNTV would issue shares of its publicly traded common stock to Plaintiff when requested in tranches, as payment for the settlement of Plaintiff's Claim under Section 3(a)(10).

39. For the foregoing reasons, Plaintiff has suffered a considerable loss which can only be remedied under Section 3(a)(10), which necessitates this present action.

40. Section 3(a)(10) requires that a hearing be conducted as to the fairness of the terms and conditions of the exchange of claims for securities.

## Count II

## Declaratory Judgment (28 U.S.C. § 2201)

41. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

42. There presently exists between Plaintiff and Defendant an actual and justiciable controversy with respect to whether missed or late payments under the Salinas Acquisition are required to be disclosed by PNTV in an 8-K within four (4) business days.

43. The Securities and Exchange Commission ("SEC") issued an Investor Bulletin entitled *How to Read an 8-K*, which is attached hereto an incorporated herein as Exhibit B. Among other things, *How to Read an 8-K* contains an explanation of the circumstances under which a public company would need to file an 8-K citing Item 9.01 and Item 2.04, as excerpted in relevant parts below:

> Item 9.01 – Financial Statements and Exhibits
>
> Under this item, a company must file certain financial statements and list the exhibits that it has filed as part of the 8-K. For example, if a company discloses in Item 2.01 that it has acquired a business, Item 9.01 would require the company to provide the financial statements of the business acquired in the same or a later-filed amended 8-K…
>
> Item 2.04 – Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement
>
> Defaults on loans or other events that trigger the acceleration or increase of a financial obligation must be disclosed in an 8-K if the consequences of the event are material to the company. For example, if a company defaults on a loan, its creditors typically have the right to demand immediate payment of the entire amount owed. In such a case, if immediate repayment would be material, the company must disclose the amount to be repaid, the repayment terms and other financial obligations that might have to be repaid on an accelerated basis as a result of the initial default…

44. Defendant never disclosed the financial statements in the 8-K filed on May 29, 2018, and Defendant has to date never filed an 8-K/A to amend that May 29, 2018 8-K to include such financial information regarding the purported "acquisition" of the leasehold interest in the 56,000 square foot cannabis agricultural facility or the status of the remaining $4,000,000 in payments still due on the Salinas Acquisition.

45. Despite Defendant's failure to include such financial statements for the purported "acquisition" of the Salinas facility, the Defendant's website at https://playersnetwork.com/about/ and https://playersnetwork.com/holdings/ both contain statements that the Salinas Acquisition generated actual revenue to the Defendant of approximately *$800 thousand in June 2018* and what were then "projected" revenues of *more than $1,000,000 in July* as excerpted below.

> In May 2018, We closed an acquisition of a 56,000 sq ft fully operating greenhouse complex in Monterrey CA to solidify Our presence in California. In our view, the acquisition will produce immediate and ongoing revenue and returns to Player's Network. The facility generated ~$800 thousand in June 2018 and is projected to generate more than $1,000,000 in July, based on the facilities existing track record and our negotiated agreement.
>
> https://playersnetwork.com/holdings/

46. The foregoing excerpt and the remainder of the text shown on https://playersnetwork.com/about/ and https://playersnetwork.com/holdings/ was still visible when printed out on January 2, 2019 and is attached hereto and incorporated herein as Exhibit C.

47. On October 10, 2018, Defendant issue a press release entitled *Player's Network Announces Unaudited Record Annual Sales up to 2,872% from Prior Year*

*Estimated at $2.52 Million Year-to-Date*. The October 10, 2018 Press Release is attached hereto and incorporated herein as Exhibit D and the relevant portions which reference the Salinas Acquisition are excerpted here and the link thereto is provided below:

> The majority of the sales growth is coming from the Company's recent acquisition, Green Leaf Farms Salinas Valley, which has produced and sold over 4,100 pounds of marijuana since acquired.
>
> …announced today that they have achieved new record sales of approximately $2.52 million since the recent acquisition of Green Leaf Farms Salinas Valley.
>
> The purpose of this announcement is to provide the Company's Shareholders and the investment community with regards to the substantial increase in sales with an informal unaudited update as it was delayed in filing its Quarterly Report Form 10-Q for the quarter ended June 30, 2018. Most of the sales are coming from the Company's recent $5,000,000 acquisition of a 56,000 sq. ft. marijuana cultivation facility in Salinas Valley, California.
>
> https://www.otcmarkets.com/stock/PNTV/news/story?e&id=1190742

48. There presently exists between Plaintiff and Defendant an actual and justiciable controversy with respect to whether Defendant's defaulted on the terms of the Salinas Acquisition by failing to make all of the required $4,000,000 in monthly payments on time, and if so, whether this failure is a material event required to be disclosed by PNTV in an 8-K.

49. Because Defendant has failed to correct or amend its public securities filings to disclose the facts stated herein, Plaintiff presently has no adequate remedy at law.

50. No press releases mentioning the status of the Salinas Acquisition have been published by the Defendant since October 10, 2018, and although Plaintiff has demanded that Defendant acknowledge the current status of the Salinas Acquisition by properly

disclosing the facts stated herein in Defendant PNTV's public securities filings, Defendant has refused to do so.

51. Plaintiff furthermore seeks a declaratory judgment from this Honorable Court pursuant to 28 U.S.C. § 2201 which declares that the existence of this lawsuit is material, which itself requires the filing of an 8-K, and that PNTV must file an 8-K/A disclosing the status of the $4,000,000 in payments due on the Salinas Acquisition, citing Item 2.04 *Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement.*

## Count III

## Injunction

52. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

53. Defendant's actions in failing to file an amendment to the May 29, 2018 8-K on Form 8-K/A containing financial information as an exhibit was in violation of its requirements as a mandatory Exchange Act filer subject to the reporting requirements of Section 12 and/or Section 15(d) of the Securities Exchange Act of 1934.

54. Defendant's actions in failing to file 10-Q Quarterly Reports for June 30, 2018 and September 30, 2018, and otherwise failing to properly disclose the facts stated herein in its public securities filings was in violation of its duties as a mandatory Exchange Act filer subject to the reporting requirements of Section 12 and/or Section 15(d) of the Securities Exchange Act of 1934.

55. Defendant's failure to file the aforementioned 8-K/A and 10-Qs have caused Defendant's stock to be dropped from the OTCQB marketplace tier and instead labeled with a "Stop Sign" which identifies PNTV as "Pink No Information" and a

delinquent SEC filer, which has wrongfully prevented Plaintiff from being able to maximize the value of his PNTV shares.

56.     Plaintiff has been wrongfully deprived of its right to maximize the value of his PNTV shares due to Defendant's improper and wrongful pattern of issuing press releases quoting unsubstantiated revenue figures without also ensuring that all aspects of the Salinas Acquisition were disclosed properly in PNTV's financial statements, including the status of the remaining $4,000,000 in monthly payments.

57.     There does not exist an adequate remedy at law to compensate Plaintiff.

58.     Defendant's actions are without basis or merit.

59.     Based upon the facts as plead herein, Plaintiff can succeed on the merits of his claim.

60.     Based upon the facts as plead herein, Plaintiff is more likely than not to suffer irreparable harm in the absence of preliminary relief.

61.     Based upon the foregoing, Plaintiff seeks a mandatory injunction requiring and compelling Defendant to correct or amend PNTV's disclosures and financial statements in order to properly disclose the status of the Salinas Acquisition and the facts as stated herein.

62.     Plaintiff's request for a mandatory injunction is reasonably suited to abate the threatened harm identified herein.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment awarding the following relief:

i. An award for all damages and losses suffered by Plaintiff as a result of Defendant's conduct, which exceed $75,000.00, including compensatory damages, consequential damages, punitive damages, interest, costs of suit, attorney's fees as a result of Defendant's conduct; and

ii. A declaratory judgment pursuant to 28 U.S.C. § 2201 which declares that this present lawsuit is material and that PNTV is required to disclose the existence of this lawsuit in an 8-K to be filed within four (4) business days of receiving service of process thereof; and

iii. A declaratory judgment from this Honorable Court pursuant to 28 U.S.C. § 2201 which declares that PNTV must file an 8-K or 8-K/A citing Item 2.04 *Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement;* and

iv. A declaratory judgment pursuant to 28 U.S.C. § 2201 which declares that certain press releases, videos, and Defendant's websites all contain material misstatements and omissions and misrepresent the financial condition of PNTV by their failure to disclose the facts as set forth herein; and

v. A mandatory injunction requiring and compelling Defendant to amend the 8-K published on May 29, 2018, and to file the 10-Q Quarterly Reports due for June 30, 2018 and September 30, 2018, in order to properly disclose the facts as set forth herein; and

vi. A mandatory injunction requiring and compelling Defendant to reserve in Plaintiff's name a sufficient number of shares of PNTV common stock to exchange for Plaintiff's Claim; and

vii.  Schedule a Fairness Hearing under Section 3(a)(10) at which time Plaintiff will appear with undersigned counsel, such that an exchange of Plaintiff's Claim for shares of PNTV common stock issued pursuant to Section 3(a)(10) may be approved by this Honorable Court; and

viii. For such other and further relief as is deemed appropriate and equitable by this Honorable Court.

Respectfully submitted,

*/s/ Matheau J. W. Stout*
Matheau J. W. Stout (28054)
400 E. Pratt Street, 8th Floor
Baltimore, Maryland 21202
(410) 429-7076 Tel
(888) 907-1740 Fax
*Attorney for Plaintiff*